UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| JAMES PARSHALL, | : |
| | : Case No._____ |
| Plaintiff, | : |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **THE FEDERAL SECURITIES LAWS** |
| IHS MARKIT LTD., LANCE UGGLA, | : |
| JOHN BROWNE, DINYAR S. DEVITRE, | : **JURY TRIAL DEMANDED** |
| RUANN F. ERNST, JACQUES ESCULIER, | : |
| WILLIAM E. FORD, NICOLETTA | : |
| GIADROSSI, GAY HUEY EVANS, | : |
| ROBERT P. KELLY, DEBORAH DOYLE | : |
| MCWHINNEY, JEAN-PAUL L. | : |
| MONTUPET, DEBORAH ORIDA, and | : |
| JAMES A. ROSENTHAL, | : |
| | : |
| Defendants. | : |

---

Plaintiff James Parshall ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. Plaintiff brings this action against IHS Markit Ltd ("IHS Markit" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their attempt to merge with S&P Global Inc. ("S&P Global"), through its wholly owned subsidiary Sapphire Subsidiary, Ltd. ("Merger Sub") (the "Proposed Transaction").

2.      On November 30, 2020, IHS Markit announced that it had entered into an Agreement and Plan of Merger (and as amended on January 20, 2021, the "Merger Agreement") pursuant to which, each IHS Markit stockholder will receive 0.2838 shares of S&P Global common stock for each share of IHS Markit common stock they own.

3.      On January 22, 2021, IHS Markit filed a Schedule 14A Definitive Proxy Statement (the "Proxy") with the SEC.  The Proxy is materially deficient and misleading because, *inter alia,* it fails to disclose material information regarding: (i) IHS Markit's and S&P Global's financial projections; (ii) the financial analyses performed by Morgan Stanley & Co. LLC ("Morgan Stanley"); and (iii) Morgan Stanley's potential conflicts of interest.  Without additional information, the Proxy is materially misleading in violation of the federal securities laws.

4.      The stockholder vote to approve the Proposed Transaction is forthcoming.  Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an

individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. IHS Markit's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue appropriate in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of IHS Markit.

9. Defendant IHS Markit is a Bermuda corporation, with its principal executive offices located at Fourth Floor, Ropemaker Place, 25 Ropemaker Street, London, England EC2Y 9LY. IHS Markit's common stock trades on the New York Stock Exchange under the ticker symbol "INFO."

10. Defendant Lance Uggla ("Uggla") is the Company's Chairman of the Board and Chief Executive Officer ("CEO") and has served as a director since 2003.

11. Defendant John Browne has served as a director of the Company since 2018.

12. Defendant Dinyar S. DeVitre has served as a director of the Company since 2012.

13. Defendant Ruann F. Ernst has served as a director of the Company since 2006.

14. Defendant Jacques Esculier has served as a director of the Company since April 2020.

15. Defendant William E. Ford has served as a director of the Company since 2010.

16. Defendant Nicoletta Giadrossi has served as a director of the Company since 2018.

17. Defendant Gay Huey Evans has served as a director of the Company since August 2020.

18. Defendant Robert P. Kelly has served as a director of the Company since 2012.

19. Defendant Deborah Doyle McWhinney has served as a director of the Company since 2015.

20. Defendant Jean-Paul L. Montupet has served as a director of the Company since 2012.

21. Defendant Deborah Orida has served as a director of the Company since 2019.

22. Defendant James A. Rosenthal has served as a director of the Company since 2013.

23. Defendants identified in paragraphs 10-22 are referred to herein as the "Board" or the "Individual Defendants."

24. Relevant non-party S&P Global is the world's foremost provider of credit ratings, benchmarks and analytics in the global capital and commodity markets, offering ESG solutions, deep data and insights on critical business factors. S&P Global has provided essential intelligence for more than 160 years, with divisions including S&P Global Ratings, S&P Global Market Intelligence, S&P Dow Jones Indices and S&P Global Platts.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

25. IHS Markit is an information company with expertise across some of the world's largest industries, leveraging technology and data science to provide the insights, software, and data to help customers make better informed decisions, driving growth, performance, and efficiency.

26. On November 11, 2019, IHS Markit announced its fourth quarter and full year 2020 financial results, including Adjusted EBITDA of $464.9 million, up 12% from $452.9 million in the fourth quarter of 2019 ("4Q19"); Adjusted EPS of $0.72, up 11% from Adjusted EPS of $0.65 4Q19; and Cash Flow from Operations of $338.3 million, up 50% from $225.7 million in 4Q19.

For the full year 2020, Adjusted EBITDA was $1.84 billion, up 3% from $1.78 billion for 2019; Adjusted EPS was $2.84, up 8% as compared with $2.63 in 2019; GAAP EPS was $2.17, up 76% from $1.23 for 2019; and net income attributable to IHS Markit in 2020 was $870.7 million, a 73% increase from $502.7 million in 2019. Commenting on the Company's performance, Defendant Uggla stated, "We were pleased to see continued stability in Q4, and 2020 demonstrated the resiliency of our business model given the economic challenges due to the pandemic."

27. On November 30, 2020, IHS Markit and S&P Global issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> NEW YORK and LONDON, Nov. 30, 2020 /PRNewswire/ -- S&P Global (NYSE: SPGI) and IHS Markit (NYSE: INFO) today announced they have entered into a definitive merger agreement to combine in an all-stock transaction which values IHS Markit at an enterprise value of $44 billion, including $4.8 billion of net debt. The transaction brings together two world-class organizations, a unique portfolio of highly complementary assets in attractive markets and cutting-edge innovation and technology capability to accelerate growth and enhance value creation.
>
> Under the terms of the merger agreement, which has been unanimously approved by the Boards of Directors of both companies, each share of IHS Markit common stock will be exchanged for a fixed ratio of 0.2838 shares of S&P Global common stock. Upon completion of the transaction, current S&P Global shareholders will own approximately 67.75% of the combined company on a fully diluted basis, while IHS Markit shareholders will own approximately 32.25%.
>
> S&P Global and IHS Markit's unique and highly complementary assets will leverage cutting-edge innovation and technology capability, including Kensho and the IHS Markit Data Lake, to enhance the customer value proposition and provide the intelligence customers need to make decisions with conviction. Serving a global customer base across financial information and services, ratings, indices, commodities and energy, and transportation and engineering, the pro forma company will provide differentiated solutions important to the workflows of many of the world's leading companies.
>
> The transaction creates a pro forma company with increased scale, world-class products in core markets and strong joint offerings in high-growth adjacencies, including private assets, small and medium enterprises ("SME"), counterparty risk management, supply chain and trade and alternative data. Combined, the two companies will provide comprehensive solutions across data, platforms, benchmarks and analytics in ESG, climate and energy transition.

Douglas Peterson, President and Chief Executive Officer of S&P Global, will serve as CEO of the combined company. Lance Uggla, Chairman and Chief Executive Officer of IHS Markit, will stay on as a special advisor to the company for one year following closing.

"Through this exciting combination, we are able to better serve our markets and customers by creating new value and insights," said Mr. Peterson. "This merger increases scale while rounding out our combined capabilities, and accelerates and amplifies our ability to deliver customers the essential intelligence needed to make decisions with conviction. We are confident that the strengths of S&P Global and IHS Markit will enable meaningful growth and create attractive value for all stakeholders. We have been impressed by the IHS Markit team and look forward to welcoming the talented IHS Markit employees to S&P Global."

"This transaction is a win for both IHS Markit and S&P Global as we leverage our respective strengths in information, data science, research and benchmarks," said Mr. Uggla. "Our highly complementary products will deliver a broader set of offerings across multiple verticals for the benefit of our customers, employees and shareholders. Our cultures are well aligned, and the combined company will provide greater career opportunities for employees. We look forward to bringing together our teams to realize the potential of this combination."

**Strategic Rationale – Powering the Markets of the Future**

- **Greater scale and business mix**: The transaction creates a combined business with increased scale and world-class products in core market segments. The combined company will have balanced earnings across major industry segments and a resilient portfolio, providing additional financial flexibility to pursue value-creating opportunities.

- **Creates strong offerings in high-growth adjacencies**: The combined company will be differentiated in attractive high-growth adjacencies, including ESG, climate and energy transition, private assets and SME, counterparty risk management, supply chain and trade, and alternative data, which together represent $20 billion of total addressable market, growing at least 10% annually. As part of its ongoing commitment to remain on the cutting edge of technology and innovation, the combined company will continue to deploy well above $1 billion annually on technology.

- **Increased customer value proposition**: The transaction brings together both companies' customer-first cultures and broadens their combined reach across client segments, workflows and use cases. The pro forma organization will serve diverse customer segments across financial services, corporates and governments with differentiated data and intelligence, including the potential to link and create novel insights from new data set

combinations.  S&P Global and IHS Markit's complementary product portfolios are expected to enable the combined company to serve new and expanded customer use cases in existing and new geographies.

- **Best-in-Class talent**: The combined company will benefit from two best-in-class workforces with deep expertise and strong, complementary cultures focused on serving the global needs of customers. As a single organization, the collective workforce will benefit from expanded opportunities for career development and growth.

**Financial Benefits – Strong Financial Profile and Outlook**

- **Enhanced growth profile**: The pro forma company will have 76% recurring revenue and expects to realize 6.5-8.0% annual organic revenue growth in 2022 and 2023, balanced across major industry segments.

- **Increased profitability**: The combined company will target 200 basis points of annual EBITA margin expansion.

- **Attractive synergy opportunities and earnings accretion**: The transaction is expected to be accretive to earnings by the end of the second full year post-closing.  The combined company expects to deliver annual run-rate cost synergies of approximately $480 million, with approximately $390 million of those expected by the end of the second year post-closing, and $350 million in run-rate revenue synergies for an expected total run-rate EBITA impact of approximately $680 million by the end of the fifth full year after closing.

- **Maintains strong balance sheet to pursue further growth**: The combined company is expected to maintain a strong balance sheet and credit profile, with pro forma annual revenue of more than $11.6 billion.  S&P Global intends to maintain a prudent and flexible capital structure and will target leverage of 2.0-2.5x EBITA, on an agency-adjusted basis.

- **Enhanced free cash flow generation to support attractive capital return**: The combined company expects to generate annual free cash flow exceeding $5 billion by 2023, with a targeted dividend payout ratio of 20-30% of adjusted diluted EPS and a targeted total capital return of at least 85% of free cash flow between dividends and share repurchases.  Both companies expect to maintain their current dividend policies until the close of the transaction.

**Management and Board**

Following closing, the Company will be headquartered in New York with a substantial presence in key global markets across North America, Latin America, EMEA and Asia Pacific.

The combined company is committed to retaining a strong, highly qualified and diverse Board that has the appropriate skills, knowledge and experience to oversee the company and its long-term strategic growth and performance. The combined company's Board of Directors will include the current S&P Global Board of Directors and four directors from the IHS Markit Board. Richard Thornburgh, current Chairman of S&P Global, will serve as Chairman of the combined company.

The leadership team will comprise senior leaders from both organizations. Ewout Steenbergen, Executive Vice President and Chief Financial Officer of S&P Global, will serve as Chief Financial Officer of the combined company.

The transition and integration of the combined company will be led by executives from both S&P Global and IHS Markit. The approach to integration planning will draw from the best practices of both companies to ensure continuity for customers, employees and other stakeholders.

**Timing and Approvals**

The transaction is expected to close in the second half of 2021, subject to, among other things, the expiration or termination of the applicable waiting periods under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, other antitrust and regulatory approvals, and other customary closing conditions. The transaction requires the approval of shareholders of both S&P Global and IHS Markit and is not subject to any financing conditions.

## The Proxy Misleads IHS Markit Stockholders by Omitting Material Information

28.     On January 22, 2021, defendants filed the materially misleading and incomplete Proxy with the SEC. Designed to convince IHS Markit's stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning: (i) IHS Markit's and S&P Global's financial projections; (ii) the financial analyses performed by Morgan Stanley; and (iii) Morgan Stanley's potential conflicts of interest.

*Material Omissions Concerning IHS Markit's and S&P Global's Financial Projections and Morgan Stanley's Financial Analyses*

29. The Proxy omits material information regarding IHS Markit's and S&P Global's financial projections.

30. For example, the Proxy fails to disclose the line items underlying the unlevered free cash flows for each of the S&P Global Projections for S&P Global, S&P Global Projections for IHS Markit, S&P Global Projections for the Combined Company, IHS Markit Projections for IHS Markit, and IHS Markit Projections for S&P Global.

31. With respect to the S&P Global Projections for S&P Global and the IHS Markit Projections for S&P Global, the Proxy fails to disclose adjusted EBITDA.

32. With respect to the S&P Global Projections for IHS Markit, the Proxy fails to disclose: (i) adjusted net income; and (ii) adjusted diluted EPS.

33. With respect to the S&P Global Projections for the Combined Company, the Proxy fails to disclose: (i) adjusted EBITDA; and (ii) adjusted net income attributable to common shareholders.

34. With respect to Morgan Stanley's *IHS Markit Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the Company's terminal value; (ii) the inputs and assumptions underlying the discount rates ranging from 5.63% to 6.96%; and (iii) the number of fully diluted outstanding shares of IHS Markit common stock.

35. With respect to Morgan Stanley's *S&P Global Discounted Cash Flow Analysis,* the Proxy fails to disclose: (i) S&P Global's terminal value; (ii) the inputs and assumptions underlying the discount rates ranging from 5.53% to 6.96%; and (iii) the number of fully diluted outstanding shares of S&P Global common stock.

36. With respect to Morgan Stanley's *Analyst Price Targets* analysis, the Proxy fails to disclose the individual price targets observed in the analysis and the sources thereof.

37. With respect to Morgan Stanley's *Analysis of Pro Forma Financial Effects* analysis, the Proxy fails to disclose the specific accretion and dilution figures to S&P Global's 2022, 2023 and 2024 pro forma adjusted earnings per share.

38. The omission of this material information renders certain portions of the Proxy materially misleading, including, *inter alia*, the following sections of the Proxy: "Certain Unaudited Prospective Financial Information" and "Opinion of IHS Markit's Financial Advisor."

*Material Omissions Concerning Morgan Stanley's Potential Conflicts of Interests*

39. The Proxy fails to disclose potential conflicts of interest faced by the Company's financial advisor, Morgan Stanley.

40. For example, the Proxy fails to disclose the parameters and criteria Morgan Stanley needs to satisfy to receive a discretionary fee from IHS Markit, the maximum discretionary fee available and whether the Company anticipates paying Morgan Stanley the additional fee.

41. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

42. The omission of this information renders certain portions of the Proxy materially misleading, including, *inter alia*, the following section of the Proxy: "Opinion of IHS Markit's Financial Advisor."

43. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

44. Plaintiff repeats all previous allegations as if set forth in full.

45. During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

46. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy. The Proxy was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about IHS Markit's and S&P Global's financial projections and the financial analyses performed by Morgan Stanley, and Morgan Stanley's potential conflicts of interest,. The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

47. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

48. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

49. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of
### Section 20(a) of the Exchange Act

50. Plaintiff repeats all previous allegations as if set forth in full.

51. The Individual Defendants acted as controlling persons of IHS Markit within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of IHS Markit, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

54. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed

Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, IHS Markit's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of IHS Markit, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to disseminate an S-4 that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: February 25, 2021

**ROWLEY LAW PLLC**

*S/ Shane T. Rowley*
Shane T. Rowley (SR-0740)
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
Email: drl@rowleylawpllc.com

*Attorneys for Plaintiff*